# UNITED STATES DISTRICT COURT

## IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

CHI KONG LEUNG on behalf of himself and
all others similarly situated,

          Plaintiff ,

     v.

HOME BOY RESTAURANT INC. d/b/a
TRIBECA GRILL and DREW NIEPORENT,

          Defendants.

_____

INDEX NO: 07 CIV 8779 (RJS)

**JOINT STIPULATION OF
SETTLEMENT AND RELEASE**

**JUDGE: HON. RICHARD J.
SULLIVAN**

## <u>MEMORANDUM OF LAW OF MOTION IN SUPPORT OF STIPULATION OF SETTLEMENT AND DISMISSAL OF CLASS AND COLLECTIVE ACTION</u>

D. Maimon Kirschenbaum (DK-2338)
Charles E. Joseph (CJ-9442)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiffs and proposed collective action and class action members*

## TABLE OF CONTENTS

**Page**

I.       INTRODUCTION …………….. …………………………………………1

II.      BACKGROUND …………………………………………………………2

    A.  The Litigation……………………………………………………..........2

    B.  The Parties Have Fully Explored the Strengths and Weakness of Their
    Respective Positions……………………………………………………...5

III.     THE PROPOSED SETTLEMENT…….... ... ………………………………7

    A.  Settlement Class………………………………………………………...7

    B.  Settlement Consideration………………………………………………7

    C.  Release of Claims………………………………………………………9

IV.    PRELIMINARY SETTLEMENT
       APPROVAL....…………………………………………………………...10

    A.  The Role of the Court……………………………………………………10

    B.  The Proposed Settlement Class May be Certified…………………………..11

        1.  Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)…….12

               a.  Numerosity is Satisfied………………………………………12
               b.  Commonality is Satisfied……………………………………12
               c.  Typicality is Satisfied………………………………………...13
               d.  Adequate Representation is Satisfied………………………...13

        2.  The Court Should Certify The Settlement Class Under
           Rule 23(b)(3)…………………………………………………………14

        3.   The Court Should Appoint Plaintiffs' Counsel As Class Counsel….15

    C.  Criteria To Be Considered In Deciding Preliminary Approval……………...15

1. There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The Product of Extensive, Arm's Length Negotiations……………………………………………………………18

2. The Settlement Contains No Obvious Deficiencies…………………19

3. The Settlement Falls Within The Range Of Possible Approval……………………………………………………………..…..20

V.    THE PROPOSED PLAN OF CLASS NOTICE…………..……………..…..21

VII.    CONCLUSION …………………………………………………................24

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiff Chi Kong Leung ("Class Representative") applies to this Court for preliminary approval of a proposed settlement in this wage and hour class and collective action ("Wage Action").  Counsel to Home Boy Restaurant, Inc. and Drew Nieporent ("Defendants") have agreed to the terms of the settlement and do not object to relief requested herein.

## I.        INTRODUCTION

Class Representative submits this motion requesting preliminary approval of a proposed settlement in this Wage Action brought on behalf of certain employees of Defendants.  The settlement will resolve all claims before this Court.  The proposed compromise is set forth in a Joint Stipulation of Settlement and Release, dated September 3, 2008 ("Agreement"), attached as Exhibit A.

The Class Representative asks this Court to enter the proposed Order ("Order"): (1) finding that the proposed settlement class meets the requirements for class certification under Rule 23; (2) approving the Class Notice and Consent to Join Forms (Exhibit B) that will be sent to the proposed settlement class; (3) setting a deadline within 20 days after the Order is preliminarily approved that the Class Notice and Consent to Join Forms be sent to the proposed Settlement Class members by mail to the employees' addresses as they are maintained by the Defendants; (4) setting a deadline within 45 days of mailing of Class Notice and Consent to Join Forms for opting out of, or excluding oneself from, the state claim class action pursuant to Rule 23; (5) setting a deadline of 45 days after mailing of Class Notice and Consent to Join Forms for objecting to the settlement; (6) setting a deadline within 45 days of mailing of Class

Notice and Consent to Join forms for opting in to the FLSA collective action pursuant to Rule 216(b); (7) appointing the Class Representative as class representative for the purposes of prosecuting the state law claims on behalf of the proposed state class; (8) appointing Class Counsel as counsel for the proposed class; and, (9) scheduling a hearing at the Court's convenience at which the Court will consider the Parties' motion for (i) final approval of the settlement, (ii) entry of their proposed final judgment, and (iii) approval of Class Counsel's application for an award of attorneys' fees and reimbursement of costs.

## II.     BACKGROUND

### A.     The Litigation

The Class Representative filed this Wage Action on October 11, 2007, alleging wage and hour violations under the FLSA and New York's Labor Laws.  A copy of the Complaint is attached hereto as Exhibit C.   The case was assigned for all purposes to Judge Richard J. Sullivan.  The Class Representative's proposed class consisted of: "all non exempt tipped employees employed by Defendants, including servers and/or busboys on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period")."

The Wage Action alleges that the Defendants violated the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.,* New York Labor Law §§ 191,193, 196-d,198-b, 650, *et. seq,* 652, and 663 and relevant sections of N.Y. Comp. Codes R. & Regs.   The Wage Action contended that Defendants paid them and the Class members an hourly wage equal to New York's food service worker minimum wage, 12 N.Y. Comp. Codes R. &

Regs §137-1.5,[1] which is significantly lower than the federal and state minimum wages.[2]

They contended Defendants were not entitled to the state and/or federal "tip-credits,"

because Defendants routinely retained portions of their tips by allowing managers to share in

their tip-pool. *See 29 U.S.C. §203(m)* (tip-credit does not apply where employers retain

portions of employees' tips). In addition, outside of a valid tip-pool, New York law

prohibits an employer or an employer's agent from retaining any portion of an

employee's tips, regardless of whether the employer avails itself of any tip-credits. *N.Y.*

*Lab. Law § 196-d. See Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308 (S.D.N.Y.

1998) (quoting 29 U.S.C. § 203(m)[3]) (finding that because Defendant's manager "was

not an employee 'who customarily and regularly received tips,'" he could not be part of

the tip-pool); *Chu Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y.

2002) (invalidating a tip-pool in which management took part).

The Class Representative contended that Defendants were liable to the Settlement

Class Members for an amount equal to the difference between their actual wages (the

foodservice workers' minimum wage) and the minimum wage as applied without any

tip-credits, plus the amount of tip money illegally retained by the Restaurant. *See Chan v.*

*Sung Yue Tung Corp.,* 2007 WL 313483, **27-28 (S.D.N.Y. Feb 01, 2007) (where

Defendants allowed managers to share in tip-pool, awarding both the illegally retained

---

[1] In 2001-2004, the foodservice worker minimum wage was $3.30 per hour, 2005- $3.85 per hour, 2006- $4.35 per hour, and 2007- $4.60 per hour.

[2] From 2001-2005, the New York minimum wage was $5.15 per hour, in 2005, it became $6.00 per hour, 2006- $6.85 per hours, and 2007- $7.15 per hour. 12 N.Y. Comp. Codes R. & Regs §137-1.2. During most of the relevant period, the federal minimum wage was $5.15. 29 U.S.C. § 206.

[3]    29 U.S.C. § 203(m) requires that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

tips and the tip-credit differential). Additionally, the Wage Action sought payment of the unpaid portion of minimum and overtime wages, liquidated damages, penalties, interest, attorneys' fees, costs, and equitable relief to be provided to the entire proposed class.

After Defendants appeared in the Wage Action, the Parties met and conferred over both the legal issues and the factual bases underlying the Class Representative's claims. The parties conducted extensive paper discovery, and Defendants took Class Representative's deposition, which lasted one full day. Defendants provided Class Counsel with extensive volumes of workplace and statistical analysis information. Class Counsel analyzed the factual and statistical information and throughout the litigation, discussed and argued extensively the legal and factual issues in this case with Defendants' Counsel.

Throughout the course of the Wage Action, Class Counsel and Defendants' Counsel vigorously investigated the claims against Defendants. As part of the investigation, Defendants produced the personnel files of several putative Settlement Class members, wage and payroll records, including but not limited to, daily and weekly payroll worksheets, tip-sheets, employment applications, and written disciplinary documents. In addition, Defendants' Counsel interviewed corporate representatives who had knowledge of the facts and provided this information to Class Counsel. The Parties agreed that these abundant documents were relevant to the claims asserted by the Class Representative.

While aggressively pursuing this litigation, the Parties continued to discuss a possible resolution. Defendants' production of documents and the information provided at the Class Representative's deposition facilitated meaningful and productive settlement

discussions. Class Counsel has reviewed and analyzed all of the wage and tip records provided and other information produced by Defendants relating to the putative class. Class Counsel also interviewed several former employees of Defendants, including the three additional plaintiffs that opted-in to this lawsuit by filing consent to join forms with the Court.

After fact gathering and briefing, analysis of relevant documents and wage records, and protracted hard-fought negotiations, the parties have determined it to be in their mutual best interest to settle the Litigation by resolving this matter on behalf of the Class, as defined below. The parties seek the Court's approval of the Settlement Agreement and Release so as to effectuate the settlement and release of claims by the Class.

### B.     The Parties Have Fully Explored the Strengths and Weakness of Their Respective Positions

During the pendency of the Litigation, Class Counsel and Defendants' Counsel vigorously investigated the claims against Defendants. As part of the investigation, Defendants voluntarily produced a significant percentage of their tip wage records for the restaurants throughout the claim period. The wage records included the full personnel plaintiffs, tip reports for the entire restaurant, and other wage records. In addition, Defendants' Counsel met with corporate representatives who had knowledge of the facts and provided information to Class Counsel and took the Class representative's deposition. The Parties agreed that the discovery conducted concerned the claims asserted on behalf of the putative class and that the wage records helped facilitate meaningful settlement discussions. Class Counsel analyzed all of the records provided

and other information produced by Defendants relating to the putative class and conducted extensive interviews with former employees of Defendants.

At all times throughout the Wage Action, Defendants continued to deny any liability or wrongdoing of any kind associated with the claims alleged in the Wage Action.  Defendants further contended, among other things, that they complied with the FLSA and all state wage and hour laws.  Specifically, Defendants maintained that their tip-pools were voluntary and that all members of their tip-pools were service employees who are allowed to share in tipped employees' tips.  *See Kilgore v. Outback Steakhouse*, 160 F.3d 294 (6th Cir. Tenn. 1998) (allowing hosts to share in servers' tips because the hosts provide direct customer service). The Class Representative and the opt-in plaintiffs, however, believe they have filed a meritorious action based on alleged violations of the FLSA and state wage and hour laws.

After countless hours of negotiation, the Parties' counsel entered into the attached Agreement settling the Wage Action, provided, of course, that the Court grants approval of the Agreement.  The settlement amount is, of course, a compromise figure.  It took into account what the parties contended were risks regarding proof of wages owed, and other defenses asserted by Defendants.  The settlement amount accounts for the possibility a settlement reached months or even years later might be reduced due to Defendants' litigation costs.  Furthermore, the Class Representative, opt-in plaintiffs, and Class Counsel also considered the time, delay, and financial repercussions in the event of liability trials, numerous damages trials, and appeal by Defendants.  Of particular relevance to the reasonableness of the proposed settlement is the fact that Defendants will vigorously contest Plaintiff's' claims if the Litigation does not settle.  Although the

Class Representative and Class Counsel believe that their claims have merit, they recognize that they would face legal, factual and procedural obstacles to recovery. In light of the strengths and weaknesses of the case, the Class Representative and Class Counsel believe that the settlement easily falls within the range of reasonableness because it achieves a significant benefit for the Settlement Collective Action Members where failure before or at trial is possible.

### III.    THE PROPOSED SETTLEMENT

#### A.    Settlement Class

The proposed settlement has been reached on behalf of the [proposed] "Class," defined in the Agreement as follows:

> [A]ll non-exempt employees employed by Defendants as a server, runner, busser, bartender, or any similar position during the relevant Claims Periods set forth below:
>
> a.    Under applicable state laws, excluding those current or former employees who opt-out of or exclude themselves from this Agreement -  from October 11, 2001 through September 5, 2008 ("State Claim Period").
>
> b.    Under the FLSA, and including only those current or former employees who opt-in to the FLSA class - from September 5, 2005 through September 5, 2008 ("FLSA Claim Period").

Agreement § 5.

#### B.    Settlement Consideration

The Agreement provides that Defendants shall pay a total Gross Fund Value ("GFV") of Two Hundred and Thirty Seven Thousand Dollars ($237,000.00), which includes attorneys' fees, costs, expenses, and Defendants taxes and withholding payments.  Based on Class Counsel's assessment of the evidence produced by

Defendants, this settlement fund represents approximately a large percentage (approximately 60%) of the Settlement Class' "best possible day," assuming, *inter alia*: (1) the Rule 23 class was certified; (2) the collective action remained certified; and (3) Class Representative's claim of improper retention of tips was meritorious.

Class Members will receive an award without having to file a proof of claim or a claim form. While Class Members employed within three years of the date of Preliminary Approval will be eligible for a small enhancement by submitting a Blue Consent to Join Form, *all* Class Members will received their base award regardless. Class Counsel shall be paid, subject to Court approval, a contingent fee equal to 33.33% of the remaining GFV, or Seventy Nine Thousand Dollars ($79,000.00). This percentage is in accordance with the Professional Services Agreement entered into between the Class Representative, all opt-in plaintiffs to date and Class Counsel. The Agreement also provides individual enhancement awards, which shall also be paid out of the GFV, subject to Court approval, to three plaintiffs (including to Class Representative) totaling Ten Thousand Dollars ($10,000.00). The remaining amount (the "NFV") shall be distributed among Class Members that do not opt-out of the litigation ("Settlement Class Members") on a pro-rata basis determined by how many hours each Qualifying Class Member worked for Defendants during the Class Period. Defendants will withhold relevant taxes from these payments.

"The pro rata share of the NFV shall be calculated as follows:

(i)        each employee will be classified by Class Counsel as either a "Server," "Runner/Busser," or "Bartender" according to the last job held while employed at Defendants;

(ii)        each Server will receive three points for each hour that the employee recorded in the Defendants' records at any time during the applicable Claim Period;

(iii)        each Runner/Busser will receive two points for each hour that the employee recorded in the Defendants' records at any time during the applicable Claim Period;

(iv)        each Bartender will receive one and a half points for each hour that the employee recorded in the Defendants' records at any time during the applicable Claim Period;

(v)        each Settlement Class Member who was employed by Defendants during the FLSA Claim Period who submits a valid blue Consent to Join the FLSA claim form within forty five (45) days after Class Counsel mails the Settlement Class Members the forms will have their points during the FLSA Claim Period increased by three percent (3%).

(vi)        each Settlement Class member's Total Points shall be the sum of their hours worked times the applicable multiplier;

(vii)        Class Counsel will determine each Settlement Class member's classification, and their classification is binding for purposes of this Agreement; and,

(viii)        each Settlement Class Member shall receive a pro rata share of the NFV equal to the Settlement Class Member's Total Points divided by the aggregate Total Points of all Settlement Class members who file qualified claims, multiplied by the NFV."

Agreement § 32(b).

The differences between the multipliers are based on each position's participation level in Defendants' tip-pools. For example, runners and bussers typically received fewer tips than servers. The point enhancement for those employees submitting a valid Blue Consent to Join Form is consistent with the increased damages available for FLSA claims. *See* 29 U.S.C. § 216(b) (permitting a recovery for liquidated damages).

### C.        Release of Claims

In return for the above consideration, Settlement Class Members will release all

"Released Claims" (as defined in the Settlement Agreement) against each and all of the Defendants and all related entities. In general, Settlement Class Members will release all wage and hour claims under state and federal law. Settlement Class Members will retain claims unrelated to their wage and hour claims.

## IV.    PRELIMINARY SETTLEMENT APPROVAL

### A.    The Role of the Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court. *See e.g. In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418, at 429 (S.D.N.Y. 2001) ("Approval of the Settlement is within the Court's broad discretion."); *In re Michael Milken & Assoc. Sec. Litig.,* 150 F.R.D. 46, 53 (S.D.N.Y. 1997) (the trial court has discretion to approve a class action settlement and should be concerned with whether the settlement, taken as a whole, is adequate, fair and reasonable) (internal citations omitted); *In re Nasdaq Market-Makers Antitrust Litigation,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-conclusive negotiations, has not obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005). Class members may then present arguments and evidence for and against the

10

terms of the settlement before the Court decides whether the settlement is fair, reasonable and adequate.. *ld.* (internal citations omitted).

In addition, because the FLSA's provisions are mandatory, employees' claims for back wages may not be compromised absent either supervision by the Secretary of Labor or approval by the Court. *See* 29 U.S.C. § 216(c).

**B.       The Proposed Settlement Class May be Certified**

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes. *See e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (Courts examine whether the proposed class would be adequately represented and fairly treated by a class action settlement).

The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites in Rule 23(a) - numerosity, commonality, typicality and adequacy of representation - and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001). To establish a class under Rule 23(b)(3), it must be shown that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

In certifying a settlement class, the Court is not required to determine whether the action, if tried, would present intractable management problems. *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court

11

need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (internal citations omitted). Rather, the Court has great discretion in determining whether to certify a class. *See In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d at 429 ("All aspects of settlement approval ...rest in the sound discretion of the district court.").

### 1. <u>Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)</u>

Plaintiffs have satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23(a).

#### a. <u>Numerosity is Satisfied</u>

The Parties estimate that the Class includes hundreds of members. Thus, the Class is so numerous that joinder of all Class members is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

#### b. <u>Commonality is Satisfied</u>

There are several questions of law and fact common to the Settlement Class. Among these questions are: (i) whether Defendants employed Plaintiff and the Class within the meaning of New York State and federal law; (ii) whether Defendants maintained accurate records reflecting the time worked by the Settlement Class Members; (iii) whether the policies, programs, procedures, protocols of the Defendants violated the Settlement Class' right to collect overtime for all hours worked over forty hours per workweek; and (iv) whether Defendants or their agents retained portions of the Settlement Class' tips.

The Class Representative and Settlement Class Members are all subject to the same exact policies in question and therefore the commonality requirement can be easily met here. *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("[t]he commonality requirement will be met if the named Plaintiffs share a common question of law or fact with the grievances of the prospective class.").

**c**.     **Typicality is Satisfied**

Similarly, the typicality requirement is satisfied here because Plaintiffs' claims arise from the same "course of events" – namely whether Defendants payroll practices complied with federal and state wage laws - as those of absent class members and rely on "similar legal arguments" to prove Defendants' liability. *See Robinson v. Metro North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir. 2001).

**d.**     **Adequate Representation is Satisfied**

Finally, Class Representative is an adequate representative of the proposed class and has fairly and adequately represented and protected the interests of all Settlement Class Members in achieving this settlement.  The Class Representative has no known conflicts with any Settlement Class Members, and retained Class Counsel who are qualified and experienced in class action and employment litigation.

Moreover, the Settlement Class Members are represented by one of the premiere wage and hour litigation firms in the nation.  Class Counsel conducted a thorough pre-filing and continuing investigation, vigorously prosecuted the lawsuit, and negotiated a settlement that provides prompt and valuable relief to Class Members.  *See Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52, 60 (2d Cir. 2000) (class counsel will be deemed adequate if it has no conflicts to any class member and if they are

13

"qualified, experienced and able to conduct the litigation.").

    **2.**    **The Court Should Certify The Settlement Class Under Rule 23(b)(3)**

Certification is appropriate because, as set forth above, the predominance and superiority requirements of Rule 23(b)(3) are satisfied. Specifically, the questions of law and fact common to all Settlement Class Members are described above. These common questions predominate over any individual issues such as the nature and extent of damages. *See In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class Members is impossible. Moreover, as the damages suffered by individual members of the Settlement Class are relatively small as compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Settlement Class Members to individually redress the harm done to them. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, at 89 (S.D.N.Y. 2001) ("[t]he interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest by individual members to bring and prosecute separate actions.").

In sum, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval to the settlement.

### 3.    The Court Should Appoint Plaintiffs' Counsel As Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel ... [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(C).

D. Maimon Kirschenbaum and Charles Joseph of Joseph & Herzfeld LLP have served and currently serve as lead counsel on many local and national class and collective actions under the FLSA and state wage and hour laws. Specifically, Mr. Kirschenbaum has extensive experience serving as lead counsel in a number of local class and collective actions representing aggrieved employees in the restaurant industry. *See, e.g.*, *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (granting conditional certification on behalf of all hourly employees employed at defendants' six New York City restaurants). Collectively, Class Counsel has recovered significant monetary awards for thousands of New York City restaurant employees. Class Counsel spent significant time investigating the Class' claims, and committed themselves to the expenditure of significant resources that were necessary to achieve a favorable result for the Class. Therefore, the Court should appoint the undersigned to serve as Class Counsel for the Settlement Class pursuant to Rule 23(g).

### C.    Criteria To Be Considered In Deciding Preliminary Approval

After certifying the Settlement Class, the Court determines whether to

preliminarily approve the settlement by making "a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation, Fourth,* § 21.633. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of reasonableness." *Id.* § 40.42.

"In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *Nasdaq Market-Makers Antitrust Litigation,* 176 F.R.D. at 102. The purpose of the preliminary approval inquiry is "to determine whether the proposed settlement is within the range of possible approval." *In re Prudential Sec. lnc.* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (the role of the court is to determine whether the proposed basis for settlement is adequate, reasonable and fair and justifies providing notice of the settlement to the proposed class).

It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement." *In re Initial Public Offering,* 226 F.R.D. at 191. Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *In re Prudential,* 163 F.R.D. at 210 (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.").

"It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential,* 163

F.R.D. at 209; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Luxottica Group S.P.A. Sec. Litig.,* 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."). "[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits." *Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972) (internal citations omitted). Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See e.g., In re Global Crossing Securities and ERISA Litigation,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted); *In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d at 430 ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Here, experienced counsel, after substantial adversarial litigation and negotiation, have concluded that the proposed settlement - which includes, among other things, substantial monetary benefits to the class members - is in the best interest of the Class as a whole. As explained above, each Qualifying Class Member will receive a significant prorated sum per hour that he or she worked for Defendants. The settlement merits

preliminary approval and submission to the Settlement Class for its consideration.

> 1.  **There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The Product of Extensive, Arm's Length Negotiations**

The criteria for evaluating a request for preliminary approval have been summarized as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*In re Prudential,* 163 F.R.D. at 209 (quotation omitted). Under these criteria, the Court should grant preliminary approval of the proposed settlement and order the dissemination of notice.

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.,* 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecute the case and negotiated the settlement at arms-length. *In re Initial Public Offering Sec. Litig,;* 243 F.R.D. 79, at 83 (S.D.N.Y. 2007) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal citations omitted).

The proposed settlement here is the product of extensive negotiations conducted through in-person and telephonic sessions. Based on their familiarity with the factual and

legal issues, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and, at all times, at arm's length, and have produced a result that the Class Representative, the opt-in plaintiffs and Class Counsel believe to be in the best interests of the Class.

### 2.    The Settlement Contains No Obvious Deficiencies

The proposed settlement has no obvious deficiencies. The settlement provides only modest enhancement awards for certain Plaintiffs in this lawsuit that were instrumental in facilitating a resolution of this matter in a *total* amount not to exceed $10,000.  These awards are reasonable in light of the overall benefit conferred on the Settlement Class. *See, e.g., Sheppard v. Consolidated Edison Co. of New York, Inc.,* No. 94-CV-0403, 2002 WL 2003206, at *6-7 (E.D.N.Y. Aug. 1, 2002) (approving aggregate incentive payment of $119,167 for six named plaintiffs in a race discrimination class action).

Finally, the settlement does not mandate excessive compensation for Class Counsel. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses, equal to 33 1/3% of the GFV.  This percentage is "within the range of reasonable attorney fees awarded in the Second Circuit." *See Klein ex rel. Ira v. PDG Remediation, Inc.*, 1999 WL 38179 (S.D.N.Y. 1999); *See also, Strougo ex rel. Brazilian Equity Fund, Inc.,* 258 F.Supp.2d 254, 262 (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.,* No. 94 Civ. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97 Civ. 5874, 1999 WL 1037878, at *4

(S.D.N.Y. Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Cohen v. Apache Corp.,* No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1 /3% of settlement fund approved for attorneys' fees); and *In re Crazy Eddie,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement fund approved for attorney's fees, plus costs).

### 3.    The Settlement Falls Within The Range Of Possible Approval

As explained above, the proposed Settlement was reached only after protracted arms' length negotiations between the Parties and their counsel who considered the advantages and disadvantages of continued litigation. Class Counsel believes that this settlement achieves all of the objectives of the litigation, namely a monetary settlement to the employees of Defendants' who were subjected to alleged illegal retention of tips and gratuities and other allegedly illegal practices. Class Counsel, with a great deal of experience in the prosecution and resolution of class actions and collective action litigation, has carefully evaluated the merits of this case and the proposed settlement. Even if the matter were to proceed to trial, Class Counsel acknowledges that the apparent strength of Plaintiff's claims is no guarantee against a complete or partial defense verdict. Furthermore, even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement.

In light of the above considerations, the proposed settlement as a whole falls within the range of possible final approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Settlement Class.

## V.     THE PROPOSED PLAN OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974) ("each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(B) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23(e)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *ld.* at 114 (internal citations omitted).  Notice is "adequate if it may be understood by the average class member."  4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:53, at 167 (4th ed. 2002).

Here, Class Counsel shall mail the Class Notice Forms to all Settlement Class Members at their last known addresses as maintained by Defendants.  Class Counsel

shall mail these Notices via first class mail. For each Class Notice returned to Class Counsel as undeliverable, Class Counsel will attempt a skip trace using the computer databases available to them and the information provided by Defendants. Those individuals who are located using the skip trace will be sent an additional copy of the Class Notice.

The proposed methods of notice comport with Rule 23 and the requirements of due process. As for the content of the notice, Rule 23(c)(2)(B) says:

> The notice [to a rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:
>
> - the nature of the action,
>
> - the definition of the class certified,
>
> - the class claims, issues, or defenses,
>
> - that a class member may enter an appearance through counsel if the member so desires,
>
> - that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
>
> - the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Where notice is being sent in connection with a proposed settlement, "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart,* 396 F.3d at 114 (internal citations omitted).

The proposed Class Notice comports with the above-cited legal authorities in all respects. To that end, the proposed Class Notice: (1) describes the nature, history, and

status of the litigation; (2) sets forth a clear definition of the proposed Settlement Class; (3) states the class claims and issues; (4) clearly provides that Settlement Class Members may enter an appearance through their own counsel; (5) discloses the right of the people who fall within the definition of the Settlement Class to exclude themselves from the Settlement, and specifies the deadline and procedure for doing so; (6) warns of the binding effects of the settlement approval proceedings on those persons who remain in the Settlement Class; and (7) advises the Class Members of how their recovery will be calculated. In addition, the Class Notice clearly describes the terms of settlement, and the relief available to Settlement Class Members.

The proposed Class Notice also provides clear notice that the Parties have agreed upon compensation for Class Counsel, in the form of attorneys' fees or reimbursable litigation expenses, and advises Settlement Class Members of the Parties' agreement that the award of attorneys' fees and reimbursable expenses to Class Counsel will affect the benefits available to Settlement Class Members.

Finally, the Class Notice also provides contact information for Class Counsel, summarizes the reasons the parties are proposing the settlement, discloses the date, time and place of the formal Fairness Hearing, and describes the procedures for objecting on the settlement and appearing at the Fairness Hearing.

The Class Notice contents satisfy all applicable requirements. Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Settlement Class.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant

preliminary approval of the proposed settlement and enter the proposed Preliminary

Order in connection with Settlement Proceedings, submitted herewith.

Date:   New York, New York
        September 5, 2008

                                        /s/D. Maimon Kirschenbaum

                                        D. Maimon Kirschenbaum (DK-2338)
                                        Charles E. Joseph (CJ-9442)
                                        JOSEPH & HERZFELD LLP
                                        757 Third Avenue, 25th Floor
                                        New York, NY 10017
                                        Tel: (212) 688-5640
                                        Fax: (212) 688-2548

                                        *Attorneys for Settlement Class*